UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| PAUL ALLEN DUNTON, | ) No. ED CV 17-1118-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 7, 2017, seeking review of the Commissioner's[1] denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on June 26, 2017, and June 27, 2017. Pursuant to the Court's Order, the parties filed a Joint Submission

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

(alternatively "JS") on February 27, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on June 29, 1960. [Administrative Record ("AR") at 31, 202, 204.] He has past relevant work experience as a janitor, a telephone solicitor, a telephone order clerk, and a truck driver. [AR at 30-31, 64-65.]

On August 27, 2012, plaintiff filed an application for a period of disability and DIB; on October 12, 2012, plaintiff filed an application for SSI payments, alleging in both that he has been unable to work since May 29, 2012. [AR at 17, 202, 204.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 17, 154-55.] A hearing was held on November 3, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 40-70.] A vocational expert ("VE") also testified. [AR at 64-69.] On January 29, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from May 29, 2012, the alleged onset date, through January 29, 2016, the date of the decision. [AR at 17-32.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 5-7.] When the Appeals Council denied plaintiff's request for review on April 24, 2017 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in

substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 29, 2012, the alleged onset date.[2] [AR at 19.] At step two, the ALJ concluded that plaintiff

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2017. [AR at 19.]

has the severe impairments of lumbar degenerative disc disease; obesity; schizoaffective disorder; bipolar disorder; and post-traumatic stress disorder. [Id.] He found that plaintiff's hypertension and diabetes were both well controlled and, therefore, non-severe [id]; he found plaintiff's complaints of neuropathy, back pain, and left shoulder pain were unsupported by the record. [AR at 19-20.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 20.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c),[4] as follows:

> [C]an lift and carry 50 pounds occasionally and 25 pounds frequently. He can sit, stand, and walk each for six hours out of an eight-hour workday. [He] can frequently climb, but he cannot climb ladders, ropes, or scaffolds. [He] can frequently balance, stoop, kneel, crouch & crawl. He can perform unskilled work with occasional contact with the public.

[AR at 22.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a janitor, telephone solicitor, telephone order clerk, and truck driver. [AR at 30-31, 65-66.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "marker" (Dictionary of Occupational Titles ("DOT") No. 369.687-026), as a "linen room attendant" (DOT No. 222.387-030), and as a "store laborer" (DOT No. 922.687-058). [AR at 32.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of May 29, 2012, through January 29, 2016, the date of the decision. [Id.]

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) "failed to properly consider relevant medical evidence in assessing plaintiff's residual functional capacity"; and (2) "failed to properly consider [plaintiff's] subjective statements of record and testimony under oath regarding his impairments, symptoms and resulting limitations." [JS at 4, 14.] As set forth below, the Court agrees with plaintiff, and remands for further proceedings.

## A. MEDICAL OPINIONS

Plaintiff contends that the ALJ erred by "over simplif[ying] plaintiff's mental impairments and limitations, and has failed to properly consider relevant medical evidence of record supporting substantial limitations which far exceed those set forth by the ALJ in his residual functional capacity assessment." [JS at 5.]

### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc.Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's]

---

[5] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r Soc. Sec., 528 F.3d 1194, 1198. (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating

doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2. Plaintiff's Mental Impairments

#### a. Dr. Bagner

Ernest A. Bagner III, M.D., a board eligible psychiatrist, conducted a psychiatric consultative examination on March 21, 2013. [AR at 315-19.] Based on his mental status examination, he found the following: plaintiff appeared "tense" and "guarded," his mood was "depressed" and his affect was "sad," his speech was "soft" and "slow," "he was not able to perform serials seven's and serial three's," he was not able to spell "music" forward and backward, and he was able to name only one president. [AR at 317.] Dr. Bagner diagnosed plaintiff with schizoaffective disorder, not otherwise specified, and alcohol abuse in full remission. [AR at 318.] Based on his examination, he opined that plaintiff had the following functional limitations: mild limitations in following simple, oral and written instruction; moderate limitations in following detailed instruction, interacting appropriately with the public, co-workers, and supervisors, and in responding to changes in a routine work setting; and marked limitations in responding to work pressures in a usual work setting. [Id.] Dr. Bagner also stated that "from a psychiatric point of view, prognosis is poor." [Id.]

The ALJ "agree[d] with Dr. Bagner's assessment, except for the marked limitations when responding to work pressures." [AR at 25.] Instead, the ALJ concluded that plaintiff had only mild to moderate limitations in responding to work pressures, because plaintiff's "behavior when dealing with the stress of losing his father [in February 2015] is consistent with a person who might have mild to moderate limitations when responding to customary work pressures." [Id.]

"[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific *and* legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (emphasis added, citation omitted). Here, in completely rejecting Dr. Bagner's finding of "marked" limitations in plaintiff's ability to deal with customary work pressures, the ALJ -- without evidentiary support --

equated plaintiff's grieving process in 2015 with his expected response to "customary work pressures" at the time of Dr. Bagner's examination in 2013. The ALJ did not provide any logical nexus between an individual's grieving process and his limitations, if any, in responding to customary work pressures; neither did he point to any legitimate evidence in the record to support his conclusion that a mild to moderate limitation in responding to work pressures was somehow compelled in this case -- especially given plaintiff's multiple severe mental impairments -- by looking at plaintiff's behavior when dealing with the grieving process two years after Dr. Bagner's examination. "ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

Based on the foregoing, this was not a specific and legitimate reason supported by substantial evidence for rejecting Dr. Bagner's opinion that plaintiff has marked limitations when responding to work pressures in a usual work setting.[6]

### b. State Agency Reviewers

The ALJ gave great weight to the opinions of the State Agency reviewers regarding plaintiff's mental limitations, except for their finding that plaintiff should work in a non-public environment:

/
/
/
/

---

[6] As argued by plaintiff, because he was of advanced age at the time of the decision, this error was not harmless. If the ALJ had found plaintiff limited to light work activity he would have "qualif[ied] for benefits on the medical vocational guideline rules (GRID Rule 202.1, 202.02, 202.04, and/or 202.06)." [JS at 4.] The VE also testified that there would be no work for an individual with plaintiff's limitations and an RFC for light work who would be "off task for a percent of the day due to symptoms," or who would miss more than three days of work a month. [AR at 67, 69.]

9

> The State Agency review psychiatrists[7] determined that [plaintiff] had a severe mental disorder due to a psychotic disorder and an anxiety disorder[,] which did not meet or equal a listed impairment; which caused moderate limitations in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation; and which did not preclude the performance of simple tasks in a *non-public* environment. The undersigned agrees that [plaintiff] is limited to medium work involving simple tasks, but occasional contact with the public is not precluded.

[AR at 30 (emphasis added) (citations omitted).] The ALJ did not provide any explanation for rejecting the "non-public" finding. [see id.]

Plaintiff maintains that the ALJ's less restrictive finding, i.e., that he is limited to unskilled work with *occasional* public contact, "simply does not allow for or adequately consider the breadth and multitude of plaintiff's mental impairments, symptoms, and resulting limitations." [JS at 6.] Defendant argues that the ALJ's finding was supported by substantial evidence. Presumably as evidence that plaintiff can interact with the public occasionally, defendant points to the ALJ's finding that "although [p]laintiff reported significant mental health symptoms such as auditory and visual hallucinations, he testified that he had been functioning with those symptoms since the age of ten, and he reported that medications helped, at least at times, in managing them." [JS at 13.] However, there is no evidence of record that shows how plaintiff was functioning at his previous work with respect to his contact with others, other than the fact that in the past it had not stopped him from working altogether. [AR at 30.] Additionally, this was not a reason given by the ALJ for rejecting the reviewers' opinions about non-public work. Because "[l]ong-standing principles of administrative law require [the Court] to review the ALJ's decision based on reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking," Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted), the Court cannot affirm the ALJ's decision on a ground that the ALJ did not consider in making his decision. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot

---

[7] Mary Ellen Menken, Ph.D., who completed her review on June 12, 2013 [AR at 83], is not a psychiatrist; neither is Heather Barrons, Psy.D., who completed her review on May 3, 2013. [AR at 94.] Only reviewing consultant, H. Skopec, M.D., appears to be a psychiatrist. [AR at 112, 127.]

affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). Furthermore, although plaintiff did testify that he has hidden the symptoms (auditory and visual hallucinations) of his schizoaffective disorder "pretty much [his] entire adult life" [AR at 50-51], he made no representation that *all* symptoms related to his other severe mental impairments (bipolar disorder and post-traumatic stress disorder) have been likewise "hidden." [Id.]

Based on the forgoing, this was not a specific and legitimate reason supported by substantial evidence for rejecting the state agency reviewers' opinions that plaintiff is limited to work in a non-public environment.

### 3. Plaintiff's Physical Impairments

With respect to his physical impairments, plaintiff contends that "the medical evidence of record reflects clear objective evidence of lumbar degenerative disc disease which in combination with [his] obesity limit him to substantially less than medium work activity," as well as his complaint of left shoulder pain, neck pain, low back pain, and chest pain/angina, all of which would "certainly impact" his ability to perform and sustain medium work activity. [JS at 8.] He notes that his weight has fluctuated between 315 and 340 pounds and that examination has revealed reduced range of motion in his left shoulder as well as complaints of low back and neck pain. [Id. (citations omitted).] Defendant argues that the ALJ evaluated the evidence and correctly reasoned that the treatment notes contained few objective findings to show plaintiff had physically disabling conditions. [JS at 10.]

The ALJ pointed out that plaintiff was treated at the San Bernardino County Department of Public Health and stated that "[t]he treatment notes contain few objective findings and merely list [plaintiff's] complaints, diagnoses, and medications." [AR at 22-23.] The ALJ acknowledged that "lumbar spine x-rays revealed what appeared to be moderate disc space narrowing . . . with mild degenerative vertebral body spondylotic spurring, and mild bilateral facet arthropathy." [AR at 23.] Based on this, and because he found that the record showed no further treatment for back pain, the ALJ found plaintiff's back pain is severe, but "only minimally so." [Id.] In addition, the

ALJ recognized plaintiff is severely obese and claimed to factor that into the RFC determination.[8] [AR at 23.]

While the ALJ acknowledged plaintiff's severe impairment of obesity, he appears to give no weight to plaintiff's other alleged physical impairments. The ALJ noted that plaintiff was treated in May 2013 by treating physician Timothy A. Denton, M.D., for chest pains, which went away five minutes after taking nitroglycerin and that Dr. Denton advised plaintiff to go to the emergency room the next time he has chest pains. [AR at 25-26, 369.] The ALJ did not mention, however, that Dr. Denton's recommendation was due to plaintiff's insurance status and that he also mentioned that plaintiff's condition would likely lead to plaintiff being hospitalized for a left heart catheterization. [AR at 369.] The record further documents that Dr. Denton made an "urgent cardio referral" in May 2013 and that in the next month plaintiff had six separate instances of chest pain. [AR at 352, 355.] Similarly, although the ALJ found there is no evidence of left shoulder impairment because an x-ray showed no abnormalities [AR at 27, 310], he failed to acknowledge the multiple times that plaintiff was treated for left shoulder pain and was found to have limited range of motion. [See, e.g., AR at 346, 350, 352, 356.] Further, he failed to consider how these conditions might limit plaintiff's ability to perform medium work.

Because the matter is being remanded for reconsideration of plaintiff's mental impairments and limitations, the ALJ on remand should also reconsider all of plaintiff's physical complaints and resulting limitations.

**4.  Conclusion**

Based on the forgoing, the ALJ did not properly consider the relevant medical evidence of record in assessing plaintiff's mental and physical impairments and his resulting limitations.

Remand is warranted on this issue.

---

[8] Although not raised by the parties, the Court notes that the ALJ assessed an RFC in which plaintiff "*cannot* climb ladders, ropes, or scaffolds" [AR at 22 (emphasis added)], but in his hypothetical to the VE regarding medium work, he posited an individual who *could* "frequently climb, climb ladders, ropes or scaffolds." [AR at 66.] On remand, any hypotheticals should be consistent with the ALJ's RFC finding.

1. **B.  SUBJECT SYMPTOM TESTIMONY AND LAY WITNESS TESTIMONY**

Plaintiff contends "the ALJ has failed to properly consider [plaintiff's] subjective statements of record and testimony under oath regarding his impairments, symptoms and resulting limitations." [JS at 14.] He further contends that the ALJ "failed to properly consider, in his unfavorable decision, the supportive and consistent statements made by Plaintiff's father, Norman James Dunton." [Id.]

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. During this inquiry, the ALJ may use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1284). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

### 1. Plaintiff's Subjective Symptom Testimony

In his applications for benefits, plaintiff alleged disability due to chronic depression, anxiety,

hearing voices, and memory issues. [AR at 22 (citing AR at 231).] At the hearing, he also testified he has lower back pain and leg cramps, which reduce his ability to stand or sit; diabetes with neuropathy in his feet; sleep apnea, which requires he use a CPAP machine; and schizoaffective disorder with hallucinations. [AR at 50-52.]

In discounting plaintiff's subjective testimony, the ALJ specifically found the following: (1) plaintiff had been able to work in the past notwithstanding his alleged impairment, (2) plaintiff provided inconsistent testimony as to his reasons for leaving his last job, and (3) treatment evidence did not show that plaintiff's symptoms disrupted his life to the extent alleged. [JS at 18-19, 30.]

Plaintiff argues that none of the reasons provided by the ALJ for discounting his subjective symptom testimony is clear and convincing, and defendant counters those arguments. Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also reconsider on remand, pursuant to SSR 16-3p,[9] plaintiff's subjective symptom testimony and, based on his reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Trevizo, 871 F.3d at 678 n.5; Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

/

/

---

[9] The Ninth Circuit in Trevizo noted that SSR 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 687 n.5 (citing SSR 16-3p). SSR 16-3p shall apply on remand.

**2. Lay Witness**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ found that the statements of plaintiff's father, Norman James Dunton, were "not entitled to great weight." [AR at 28.] Specifically, he noted that "the statements were not given under oath and they appear to be no more than a parroting of the subjective complaints reported by [plaintiff] . . ." [Id.] He found Mr. Dunton's opinion biased because plaintiff lived with his parents and, according to the ALJ, his father therefore had a financial interest in his son receiving benefits. [AR at 29.] The ALJ further found that Mr. Dunton's statements were not supported by the medical evidence discussed within the decision and that Mr. Dunton's repeating plaintiff's subjective complaints did not make these complaints any more credible. [Id.] Further, the ALJ points out one "notable" difference between the two statements: "[plaintiff] testified that he quit working to care for his parents whereas [Mr. Dunton] reported that his son was unable to care for himself anymore and that the parents prepared [his] food and took him wherever he needed to go." [Id.] The ALJ noted that Mr. Dunton "was obvious[ly] a loving parent and care[d] very much for his son" and added that "[i]t is not inconceivable that [plaintiff's] father would say or do anything to support his son, including a claim for disability benefits." [Id.]

First, plaintiff's personal relationship with Mr. Dunton is not a valid reason to discount his observations. Diedrich, 847 F.3d at 640. The Ninth Circuit has held that "regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." Id. (citing Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (internal quotation marks omitted)); see also Smolen, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." (citation omitted)). Thus, plaintiff's close relationship with his father is not a reason germane to this witness to discount the weight of his observations.

15

1    Next, the Court is not persuaded by the ALJ's finding that "[plaintiff's] father was not a medical professional and as a lay witness, was not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to [plaintiff's] ability to work." [AR at 29.] Lay witnesses are not required to have medical training, or to provide exact details of their observations. That is what makes them "lay" witnesses. Discounting the "accuracy" of a lay witness' statement because the witness is not medically trained would allow an ALJ to reject most such statements for this reason alone. Here, the witness merely offered his observations of plaintiff's behavior in a succinct and straightforward manner and did not represent that he was offering any sort of medical opinion. [See, e.g., AR at 238-47.] This was not a reason germane to this witness to discount his statements.

Remand is warranted on this issue.

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Bagner, and for discounting the reviewing consultants' finding that plaintiff was limited to non-public work, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Bagner. The ALJ must explain the weight afforded to each

opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Second, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective symptom allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Third, the ALJ on remand shall reassess Mr. Dunton's lay witness testimony and provide reasons germane to the witness for discounting that testimony, if warranted. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[10]

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 25, 2018

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.